UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANNETTE D. DAVIS,                          Case No.: 18-10075
                    Plaintiff,
v.                                           Judith E. Levy
                                             United States District Judge
RENEE THOMAS, *et. al.*,
                    Defendants.              Stephanie Dawkins Davis
_____/                 United States Magistrate Judge

## REPORT AND RECOMMENDATION
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkts. 17, 23)

## I.    PROCEDURAL HISTORY

Plaintiff brought this action *pro se* under 42 U.S.C. § 1983 on January 8,

2018.  (Dkt. 1).  On January 31, 2018, District Judge Judith E. Levy entered an

opinion and order dismissing some of the defendants and some of Davis's claims.

(Dkt. 7).  Judge Levy later referred all pretrial matters in this case to the

undersigned.  (Dkt. 10).  On August 27, 2018, defendants Thomas and Gauci filed

a motion for summary judgment (Dkt. 17) to which Davis responded (Dkt. 20).

Defendant Hammons filed her motion for summary judgment on December 18,

2018 (Dkt. 23), to which Davis responded (Dkt. 27).  On December 28, 2018,

defendants Thomas and Gauci filed a motion to amend their motion for summary

judgment by submitting the exhibits to the Court since they inadvertently neglected

to attach the exhibits to their dispositive motion.  (Dkt. 25).  The Court granted the

motion (*see* Text-Only order dated 01/04/2019) and the defendants filed the exhibits shortly thereafter.  (Dkt. 26).  In the order granting, the Court allowed Davis to submit a supplemental response to the motion for summary judgment in light of the newly-filed exhibits.  However, to date, Davis has not filed a supplemental response.

The matter is now ready for report and recommendation.  For the reasons set forth below, the undersigned **RECOMMENDS** that defendants Thomas and Guaci's motion for summary judgment (Dkt. 17) and defendant Hammons' motion for summary judgment (Dkt. 23) be **GRANTED** and that the case be **DISMISSED**.

## II.    FACTUAL BACKGROUND AND PARTIES' ARGUMENTS

Davis brought multiple constitutional claims against a number of Michigan Department of Corrections (MDOC) current and former employees.  The district court, having reviewed Davis's complaint, dismissed some claims and some defendants.  (Dkt. 7).  What remains are Davis's claims of cruel and unusual punishment by the use of excessive force, lack of medical care, and retaliation against defendants Thomas, Hammons, and Gauci.

The factual background of the complaint is as follows.  On December 3, 2013 Davis was involved in a physical altercation with prisoner Flournoy in the TV room.  (Dkt. 1, Pg ID 6).  Davis disengaged and stepped away from Flournoy

when other prisoners said the "officers" were coming.  When defendant corrections officer Thomas came into the room Davis placed her hands in the air and asked Thomas not to shoot, stating that Flournoy had a hold of her legs.  Thomas came closer to Davis and sprayed a chemical agent directly into her eyes after the altercation was over.  On July 3, 2017, Davis was diagnosed with glaucoma, which she believes is the result of being sprayed with the chemical agent.  (*Id.*).

Regarding her remaining claims against the remaining defendants, Davis says the following:  Thomas inflicted cruel and unusual punishment on Davis when she sprayed her with a chemical agent although she posed no threat.  The chemical agent caused permanent damage to her eyes.  (Dkt. 1, Pg ID 7).  Defendant nurse Hammons[1] violated the Eighth Amendment by inflicting cruel and unusual punishment when she did not treat Davis even though Davis asked for medical assistance.  Instead, Hammons told Davis that there was nothing she could do and that the burning would go away.  The allegation against defendant Gauci[2] is less clear.  Davis states, in full, "Defendant V. Gauzi after filing a grievance of the excessive classificati [sic] to segregation in retaliation.  Plaintiff again classified to ADM seg. without notice is due process violated [sic] after prisoner Flournoy was

---

[1] Davis names defendant "Hammon" in her complaint.  However, defense counsel refers to this defendant as "Hammons."  The undersigned will follow suit and refer to her as Hammons.

[2] This defendant's name is spelled differently throughout the record.  Sometimes it is Gauci, and other times it is Gauzi.  The undersigned will refer to this defendant as Gauci, as that is how her counsel refers to her.

released, causing 14th Amendment Equal Protection violation."  The undersigned assumes that this is the retaliation claim that still remains against Gauci, as there is no other allegation against this defendant.

All three defendants raise the same arguments in their motions for summary judgment: (1) that Davis did not exhaust administrative remedies against them and (2) her claims are barred by the statute of limitations.

Specifically, they argue that Davis filed two grievances through step III of the grievance process that relate to the allegations in her complaint: WHV-2013-13-12-5223-28e ("5223") and WHV-2014-01-0149-05B ("0149").  However, because Davis did not timely file her Step II appeals, she has not exhausted her administrative remedies against the defendants.  (Dkt. 17, at p. 10).  Defendant Hammons argues that since Davis did not file a grievance naming her or addressing Davis's claims against her, Davis has not exhausted remedies on the claim.  (Dkt. 23, at p. 10).

The defendants also argue that Davis's claims are barred by the three-year statute of limitations.  They contend that Davis's claims against them arose from an incident that allegedly occurred on December 3, 2013.  (Dkt. 23, at p. 11-12).  They acknowledge that the statute of limitations was tolled for the period that Davis attempted to exhaust administrative remedies.  However, Hammons argues that the tolling period does not apply to claims against her because Davis did not

raise a claim against her in a grievance.  (Dkt. 23, at p. 12).  Nevertheless, all three

defendants argue that, even considering the tolling period, Davis's claims are time-

barred because the applicable grievance reports were completed at Step III in

August 2014—more than three years before she filed her complaint in January

2018.  (Dkt. 17, at p. 11-12; Dkt. 23, at p. 13).

In her responses to the defendants' motions, which largely mirror each other,

Davis contends that she completed the grievance process through all three steps.

(Dkt. 20, at p. 3; Dkt. 27, at p. 3).  She states that the three remaining defendants

are either the subject of these grievances or have some supervisory capacity

making them aware of the constitutional violations but still they refused to resolve

the issues.  (*Id.*).  She argues that the statutory requirement that she exhaust

administrative remedies does not impose a "name all defendants" requirement,

and, therefore, she has exhausted administrative remedies in grievances 5223 and

0149.

Regarding the defendants' statute of limitations argument, Davis contends

that her case is not time-barred.  Davis says that, at the time she wrote a letter to

the MDOC Office of Legal Affairs on May 17, 2015, she was unaware of a Step III

response to her grievances.  She appears to argue that since she did not become

aware that there was a Step III response until May 2015, her limitations period should not have resumed until then.  (*Id.* at p. 4).[3]

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Summary Judgment Standard of Review[4]

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed.R.Civ.P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

---

[3] In response to Hammons' motion, Davis appears to contest defense counsel's request for concurrence on their motion for leave to amend the motion for summary judgment to file the exhibits with the court.  (Dkt. 27, at p. 6).  Her protestations are of no moment because the Court granted the motion and the defendants filed the exhibits with the Court.

[4] While some judges in this District have treated motions for summary judgment on the issue of failure to exhaust administrative remedies as unenumerated motions to dismiss under Rule 12(b)(6), *see e.g.*, *Neal v. Raddatz*, 2012 WL 488827 (E.D. Mich. Jan. 12, 2012), report and recommendation adopted in pertinent part, 2012 WL 488702 (E.D. Mich. Feb. 15, 2012), Judge Lawson has recently concluded that such a practice is not appropriate and legally unsupported. *See Anderson v. Jutzy*, 175 F.Supp.3d 781, 788 (E.D. Mich. 2016).

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Such a determination requires that the Court "view the evidence presented through

the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254.

Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of

the evidence, on a motion for summary judgment the Court must determine

whether a jury could reasonably find that the plaintiff's factual contentions are true

by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving

party fails to make a sufficient showing on an essential element of its case with

respect to which it has the burden of proof, the movant is entitled to summary

judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due

regard not only for the rights of those "asserting claims and defenses that are

adequately based in fact to have those claims and defenses tried to a jury," but also

for the rights of those "opposing such claims and defenses to demonstrate in the

manner provided by the Rule, prior to trial, that the claims and defenses have no

factual basis." *Id*. at 327.

      B.    <u>Statute of Limitations</u>

      Considering the defendants' arguments in reverse order, Davis's claims

against the defendants are time-barred by the statute of limitations. As discussed

more fully below, although the statute of limitations was tolled while Davis

attempted to exhaust administrative remedies, she still filed her complaint some

four months after the statute of limitations on her claims had run.  Therefore, her claims are barred by the statute of limitations.

There is no federal statute of limitations for § 1983 claims.  Rather, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985)).  In Michigan, the three-year statute of limitations for personal injury claims outlined in Mich. Comp. Laws § 600.5805(1) governs section 1983 actions where the cause of action arises in Michigan.  *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986); *see also Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004) (noting that the three-year statute of limitations outlined in § 600.5805(1) is "borrowed for § 1983 claims.").  However, the accrual of a section 1983 claim is a question of federal law, with reference to common law principles. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  In determining when the limitations period begins, courts must refer to federal law.  *Roberson v. Tennessee,* 399 F.3d 792, 794 (6th Cir. 2005).  The Sixth Circuit has held that, under federal law, the statute of limitations begins to run "'when the plaintiff knows or has reason to know of the injury which is the basis of [her] action.  A plaintiff has reason to know of [her] injury when [she] should have discovered it through the exercise of reasonable diligence.'"  *Id.* (quoting, *Sevier v. Turner,* 742 F.2d 262, 273 (6th

Cir.1984)).  The statute of limitations applicable to a prisoner-initiated § 1983 suit is tolled while the plaintiff exhausts available state remedies.  *Waters v. Evans,* 105 Fed. Appx. 827, 829 (6th Cir. 2004); *Brown v. Morgan,* 209 F.3d 595, 596 (6th Cir. 2000).  This is because a prisoner cannot bring suit in federal court until the administrative remedies at the facility (the standard MDOC grievance procedure) are exhausted, thus making it unfair to count the time during the pendency of the administrative proceedings against the limitations period.  *See Brown,* 209 F.3d at 596.  Consequently, the statute of limitations begins to run once the plaintiff becomes aware of the injury, but it is paused while the prisoner seeks redress through administrative proceedings at the prison.

Defendants contend that Davis filed her complaint after the three-year statute of limitations expired on her claims relating to the incidents forming the basis of her complaint, even taking into account the tolling period for exhaustion of her administrative remedies.  They contend that the applicable grievances were returned to Davis after her Step III appeal in August 2014, thereby starting the statute of limitations clock on her claims.  (Dkt. 17, at p. 11-12).  Yet, Davis did not file her complaint until January 8, 2018.

In the view of the undersigned, Davis's claims are barred by the statute of limitations.  Davis's Eight Amendment claims concern Thomas's alleged use of excessive force by way of spraying a chemical agent in her face on December 3,

2013 to break up an altercation.  (Dkt. 1).  She filed the grievance related to this

event with Thomas—grievance 5223—on December 3, 2013, thus beginning the

tolling period that day.  Her claim against Gauci concerns alleged retaliation for

Davis's having filed a grievance apparently sometime in December 2013.  (Dkt. 1).

To the extent grievance 0149 implicates this retaliation claim, the grievance

indicates that she was supposed to be released from segregation on December 27th

but was not released until January 3, 2014.  Davis filed her grievance on January 8,

2014, thereby beginning the tolling period that day.  She did not file a grievance

against Hammons.  Both grievances proceeded through Step III.  The responses to

both grievances at Step III were mailed August 25, 2014.  (Dkt. 26-1, Pg ID 333,

339).  Thus, the tolling period ended on August 25, 2014 and plaintiff needed to

file her complaint within three years of that date – i.e. in August 2017.[5]  However,

she did not file her complaint until January 8, 2018, over four months past the

statute of limitations.  Accordingly, the undersigned concludes that her claims are

barred by the statute of limitations.

---

[5] Specifically, Davis needed to file her complaint on the excessive force claim by August 25, 2017.  She became aware of the claim and began the grievance process on the same date, December 3, 2013.  Thus, her limitations period did not begin to run until the grievance process was complete.  Davis's retaliation claim needed to be filed in this Court by August 20, 2017.  Davis was released from segregation on January 3, 2014 and began the grievance process on January 8, 2014.  Thus, five days of her limitations period expired before the period was tolled when she began the administrative process.

Davis argues that the limitations period should have been tolled until she became aware of the Step III response.  (Dkt. 20, at p. 4).  According to Davis, she sent correspondence to the MDOC Office of Legal Affairs on May 17, 2015 and through this correspondence she learned of the Step III response.  The Office responded to Davis's inquiry on June 23, 2015, indicating that unidentified grievances were processed and mailed to her on August 25, 2014, and that both were denied.  (Dkt. 20, Pg ID 88).  In view of Legal Affairs' responsiveness to her inquiry, it appears that through the exercise of reasonable diligence, she could have discovered this information much sooner than she did.  Davis offers no explanation as to why she waited some 14 months after filing her Step II grievances on March 11, 2014 and some 10 months after officials received her Step III grievance on July 2, 2014 to inquire about the Step III status.  In any event, her reasons are perhaps beside the point since she cites no authority for the proposition that the tolling period ends when she becomes aware that the grievance process is complete, rather than when the grievance process is actually completed.  Furthermore, the undersigned is unaware of any authority suggesting that the limitations period does not start or resume to run against a prisoner until the prisoner is aware of a response to his or her Step III appeal.  To the contrary, it appears that the grievance process is complete, and thus the tolling period typically ends, when the prison issues its Step III response.  *See Jackson v. Saverhood*, 2013 WL 4507865, at *4

(E.D. Mich. Aug. 23, 2013) ("The Step III response ends the administrative process.") (citing MDOC Policy Directive 03.02.130); *Smith v. Doyle*, 2017 WL912115, at *2 (E.D. Mich. Feb. 6, 2017) (indicating that the grievance was completed, and the tolling period ended when MDOC issued its Step III response); *Johnson v. Freed*, 2010 WL 3907224, at *1 (E.D. Mich. Sept. 27, 2010) (Holding that prisoner's claim was not time barred where the complaint was filed within three years of the prison's Step III response); *Vartinelli v. Pramstaller*, 2010 WL 5330487, at *4 (E.D. Mich. Dec. 1, 2010), *report and recommendation adopted*, 2010 WL 5330484 (E.D. Mich. Dec. 21, 2010) ("The MDOC grievance process was completed with respect to that grievance on April 19, 2007, the date the Step III grievance response was approved" for purposes of the statute of limitations.).[6]

Accordingly, the tolling period ended when MDOC rendered its Step III response, on August 25, 2014.  Therefore, Davis's complaint filed January 8, 2018,

---

[6] Some courts in the Western District accept the argument that the tolling period ends when the grievance process was required to be completed under MDOC policy. *See, e.g., Threatt v. Olger,* 2010 WL 1848515, *5 (W.D. Mich. May 7, 2010) (Bell, J.); *Brandon v. Bergh,* 2009 WL 4646954, *3 (W.D. Mich. Dec.8, 2009) (Edgar, J.). For example, if the policy stated that the grievance process shall be complete within 90 days of the prisoner's filing of the step I grievance, those courts would accept the 90-day period as the tolling period.  These cases are unpublished and thus not binding.  The undersigned sees no utility in following these cases.  If the Court had, Davis's case would be even further beyond the limitations period as MDOC policy provides that the process shall be complete within 120 days of filling the Step I grievance, i.e. within 120 days of December 3, 2013 and January 8, 2014 respectively, or roughly April 3 and May 8, 2014.  (*See* Dkt, 23, Exhibit C, Pg ID 197, P.D. 03.02.130, ¶ S).

was filed beyond the three-year statute of limitations, and is time barred.  The complaint should be dismissed.

      C.    Exhaustion of Administrative Remedies

Even if the Court were to find that Davis's claims are somehow not barred by the statute of limitations, her claims still fail because she did not properly exhaust administrative remedies related to the claims in her complaint.

      1.    Legal Standard

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520 (2002).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532.  In *Jones v. Bock*, 549 U.S. 199, (2007), the Supreme Court held that failure to exhaust is an affirmative defense under the PLRA, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones*, 549 U.S. at 216.  "Compliance with prison grievance procedures ... is all that is required by the

PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.  "Congress has provided in §1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense.  *Jones*, 549 U.S. at 218.  Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise.  *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants."). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has repeatedly

emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

Here, pursuant to MDOC policy directive 03.02.130 which is entitled "Prisoner/Parolee Grievances," there are four stages to the grievance process that must be followed before a prisoner can seek judicial intervention, each with specific time limits. (Policy Directive, Dkt. 23-4, Pg ID 194). First, the prisoner must attempt to resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue. (*Id.* at ¶ P). If the issue is not resolved, the prisoner may file a Step I grievance within five business days of the attempted resolution. (*Id.*). If the prisoner is not satisfied with the Step I outcome, he must request a Step II appeal form and then file the Step II appeal within 10 business days. (*Id.* at ¶ BB). If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days. (*Id.* at ¶FF). The Step III response ends the administrative process. A grievance may also be rejected for a number of enumerated reasons including if the grievance is untimely, but may not be rejected if there is a valid reason for the delay. (*Id*. at ¶ G(4)).

16

2.      Analysis

In the view of the undersigned, grievances 5223 and 0149 do not exhaust administrative remedies because Davis did not timely appeal at Step II of the grievance process.

The defendants submitted all of the grievances Davis has filed while incarcerated and a report showing which grievances have been filed through Step III.  These documents are accompanied by an affidavit from the MDOC Departmental Analyst who explained that the grievance report and grievance documents attached are a true and accurate copy of the grievances Davis filed. (Dkt. 26-1, Pg ID 286-87; 23-2, Pg ID 124-25).  The grievances filed through Step III that relate to the complaint are grievances 5223 and 0149.

Davis filed grievance 5223 at Step I on December 3, 2013, the date of the macing incident.  (Dkt. 26-1, Pg ID 336).  In the grievance, Davis states that officer Thomas sprayed her even though she told her not to and even though she had her hands in the air.  (*Id.*).  The grievance was rejected because the subject was a misconduct issue.  (*Id.* at Pg ID 335).  Davis filed grievance 0149 at Step I on January 8, 2014.  (*Id.* at Pg ID 342).  In 0149, Davis alleges that she went to "seg" for a 15-day detention on December 3, 2013 because of a fight, and was scheduled to be released on December 27th.  However, she did not get out on that date; instead, she was released on January 3, 2014.  (*Id.*).  The grievance was considered

on the merits but was rejected at Step I.  According to the summary of the Step I response,[7] Davis served 15 days in "LOP" from December 12, 2013 to December 27, 2013 and was then classified to administrative segregation by the Security Classification Committee.  (Dkt. 26-1, Pg ID 341).  Davis appealed both grievances but apparently filled out her Step II appeal on grievance 5223 on the form for grievance 0149, and filled out her Step II appeal on grievance 0149 on the form for 5223.  The prison acknowledged this mistake but still concluded that the appeals were untimely.  According to the Step II appeal forms, the Step II appeals were due March 14, 2014.  (*Id.* at Pg ID 334, 340).  However, the grievance coordinator did not receive the appeals until June 9, 2014.  (*Id.*).

Defendants are correct that an untimely grievance does not resolve administrative remedies.  In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that "filing an untimely or otherwise procedurally defective administrative grievance" does not exhaust administrative remedies.  *Id*. at 83, 90-91.  The Court defined proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Id*. at 90 (emphasis in original).  The Court further stated, "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively

---

[7] The copy of the Step I response is almost entirely unreadable.  (Dkt. 26-1, Pg ID 343).

without imposing some orderly structure on the course of its proceedings." *Id*. at

90-91.

The undersigned agrees with defendants that Davis's Step II appeals in both

grievances were untimely. According to the Step II appeal forms, Davis's Step II

appeal was due March 14, 2014, but was not received by the grievance

coordinator's office until June 9, 2014. (Dkt. 26-1, Pg ID 334, 340). The appeals

were rejected as untimely. (*Id.* at Pg ID 335, 341). In her Step III appeal in 5223,

Davis appears to claim that her Step II appeal was timely based on a clerical error

documented in an attachment, but there are no additional documents in her

grievance report demonstrating a clerical error in this grievance. (*Id.* at Pg ID

340). She made a similar claim in her 0149 Step II appeal. (*Id.* at Pg ID 334).

After review of the grievances, in particular the prison's response at Step III, it

appears that the administrator considered the purported clerical error as well as the

mix-up in the 0149 and 5223 forms; she concluded that plaintiff did not provide a

valid reason for the delay. At Step III for both grievances, the grievance manager

stated that Davis's Step II appeal was considered and "properly investigated," and

that there was no additional information found that would provide a basis for

overturning the Step II decision. (*Id.* at Pg ID 333, 339). For her part, Davis

neither contested the timeliness of her Step II appeals in her response briefs nor did

she come forward with any evidence to suggest that her Step II and III appeals

were improperly rejected or denied.  Therefore, the undersigned concludes that the

defendants have met their burden to show that Davis's Step II appeals did not

comply with prison procedure (i.e. they were untimely), and that as a result, she

failed to properly exhaust her administrative remedies against the defendants.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

defendants Thomas and Gauci's motion for summary judgment (Dkt. 17) and

defendant Hammons' motion for summary judgment (Dkt. 23) be **GRANTED** and

that the case be **DISMISSED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"
etc.  Any objection must recite precisely the provision of this Report and
Recommendation to which it pertains.  Not later than 14 days after service of an
objection, the opposing party may file a concise response proportionate to the
objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).
The response must specifically address each issue raised in the objections, in the
same order, and labeled as "Response to Objection No. 1," "Response to Objection
No. 2," etc.  If the Court determines that any objections are without merit, it may
rule without awaiting the response.

Date:  February 20, 2019                         s/Stephanie Dawkins Davis
                                                 Stephanie Dawkins Davis
                                                 United States Magistrate Judge


## CERTIFICATE OF SERVICE

I certify that on February 20, 2019, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record and that I have mailed by United States Postal
Service to the following non-ECF participant: Jeanette D Davis, #847988, Huron
Valley Complex-Womens, 3201 Bemis Road, Ypsilanti, MI 48197.


                                 s/Tammy Hallwood
                                 Case Manager
                                 (810) 341-7887
                                 tammy_hallwood@mied.uscourts.gov